### CUSHING REFINING & GASOLINE CO. et al. v. CRAIL et al.

No. 21977. Opinion Filed May 5, 1931.

A. J. Follens and Clayton B. Pierce, for the petitioners.

Leo J. Williams and M. J. Parmenter, for the respondents.

KORNEGAY, J. This is a proceeding to review an award of the Industrial Commission that was made on the 10th day of November, 1930. By the terms of that award, it was found that the claimant, Paul Crail, sustained an accidental injury on March 26,

1927, arising out of and in the course of his employment by the Cushing Refining & Gasoline Company, the petitioner.

This last award recites a former award made in favor of the claimant on the 20th of March, 1928, allowing the claimant for 17½ weeks at the rate of $13.85 per week, in all $242.38, by reason of a 10 per cent. disability in his left leg. It further recites a change of condition in the condition of his left leg. The Commission made an award allowing a 15 per cent. additional permanent partial loss of the use of the left leg, and made an award in favor of the claimant for the payment of $13.85 a week, for 26½ weeks, by the petitioner.

The Commission's finding was specific. It calculated the amount of the former award, and it calculated the amount of the award made on the 10th of November, and added the amounts so as to make $605.94 in all. and the Cushing Refining & Gasoline Company, the present petitioner, was ordered to pay the difference between what had been paid and the total amount, making the amount to be paid $363.56.

The award is attacked as being indefinite and uncertain, and some decisions are cited on the subject. It appears, though, that the award is about as definite as it is possible to be made. The making of the award itself is attacked also, and numerous decisions are cited to the effect that in order to enable the Industrial Commission to make a second award, there must be proof of a change in condition, and it is claimed that the proof of a change in condition of the claimant, by reason of the injury, for the worse, is not sufficient.

The record in the case shows that when the first award was made, the claimant did not appear before the Commission. A creditor of his, however, did, and the present petitioner was represented by an attorney. Evidently the creditor was very much interested in collecting his debt, and for that reason he represented the claimant before the Commission.

The Commission, however, did have before it a statement from an attending physician, Benjamin Davis, giving the extent of the injury as follows:

"Severe bruising of hip, thigh and anterior abdominal wall. No fractures detected. Internal injuries suspected. Marked eccymosis over abdominal wall, scrotum and thigh."

And the treatment was:

"Ambulance, rest in bed, local applications, internal treatment."

The answer "no" was given to the usual inquiries contained in one of the blanks with reference to other troubles, and it was prophesied that the disability was likely to exist for five or six weeks, and quoting the language of the patient, the accident occurred as follows:

"Riding a fender on truck when he was crushed between pipe and trailer."

The date of this was April 30, 1927.

On the 16th day of May, the claimant gave notice of the trouble, and he assigned the cause of the accident as "truck overloaded and hadn't any brakes"; the nature and extent of the injury as "hip injured—hurts a little all the time." The date of the accident was March 26, 1927. He had suffered the loss of a member that was permanent, and notified his employer of the accident, and Dr. Davis was the attending physician.

The employer and the insurance carrier filed a motion on the 21st day of June, 1927, showing that on the 27th of May, 1927, the claimant was able to go to work, as evidenced by a medical report which was alleged to be attached to the motion, but is not copied in the transcript, and they wanted the Commission to approve the payments of compensation made, and they wanted the claimant to show why it should not be final.

Response was filed to this on September 30, 1927, stating that since he was injured he was not able to do any work, and that he was under the care of Dr. Davis, who was selected by the insurance carrier; denied that he was able to return to work on the 27th of May. He further stated that Dr. Davis, on the 15th of September, 1927, had informed the claimant that he was not able to work, and that, though in great need, he had not received any compensation since the 27th of May, 1927, and that he was a married man and had three children and were all dependent on him. That he had a broken hip, and that his back was wrenched and twisted and that he could not remain on his feet for any length of time, and he asked the Commission to appoint some reputable physician to examine him. This was verified.

On the 7th of October, 1927, there was a motion filed by Richard B. Durant on behalf of the employer and insurance carrier reciting the report of the 20th of June, 1927, and that they had gotten a report from the attending physician, Dr. Davis, a copy of which was sent the Industrial Commission, showing an examination made on the 6th of July, 1927, and finding no reason for the claimant's being unable to return

to work. But, notwithstanding this, they had paid him three weeks' compensation up to and including the 16th of June, 1927, and tendered him two weeks and five days' compensation, and the Commission's form of receipt, No. 7, showing a final payment in the total sum of $150.62, and that the claimant had refused to execute the receipt in accordance with the Commission's rules, and the request was made that the Commission approve as final the payments, which were theretofore made, plus the additional two weeks and five days, and order claimant to show why such payment should not be approved as final, and in the event of his failure to do so, make an order denying him further compensation.

A hearing was ordered on this for October 17th, at the Oklahoma State Capitol, room 136. Later the representative of the carrier and the employer requested the hearing to go to Drumright or Cushing, and an order was made for a hearing to be held in the city hall at Drumright, to be conducted by L. B. Kyle, chairman, on the 16th of March, 1928.

On the 20th of March, 1928, there was an order made reciting a hearing on the 16th of March, reciting that the claimant appeared in person, and the insurance carrier and the employer appeared by R. B. Durant, and it was agreed that the report of Dr. Earl D. McBride, filed with the Commission on October 22, 1927, be admitted as evidence in the case, and should be the evidence in the case, and an award was made showing that the injury on March 26, 1927, resulted in the permanent loss of 10 per cent. of the use of claimant's left leg, and awarded him compensation for 17½ weeks at $13.85, with directions to pay this, less any sums theretofore paid.

On the 26th of June, 1930, there was a motion to reopen the cause and award further compensation. It was averred therein that the claimant had much more than 10 per cent. disability to the leg and hip, and that the result of the injury was much greater than it had been, and that he was unable to do any kind of heavy work. He asked for a reopening and a hearing.

This hearing was set for the 13th of October, 1930, at the State Capitol. That hearing was before Inspector H. O. Matchett, and both sides had representatives. Dr. Shaw of Oklahoma City testified about an examination made of the case. The representative of the insurance company objected to the history of the case being given as made by the patient to the doctor, and claimed it was hearsay. But it appears to have finally gotten into the evidence that he had no medical treatment for about ten weeks except for a bruise, and that later it was X-rayed and showed a fracture of the hip bone. The doctor claimed that the physical findings revealed that the musculature of the left hip was very tense, and that there was considerable depression on the anterior surface of the ilium or hip bone, and also a bony eminence protruding downward. He further claimed that the X-ray showed a fracture of the anterior, inferior spine of the ilium, and that there were fragments of bone along the sides of the fracture.

There were objections, but the court let it in. Over the objections of the counsel for the insurance company, he gave his opinion, based on his examination, that there was a permanent disability of the left hip and leg to the extent of 25 per cent. He thought that was some change from a 10 per cent. disability on October 2, 1927.

He was cross-examined at length about healing time, and musculature attachments, and exostosis of the bone lasting over several months or years, and about finding an abnormal amount of bony deposit or callus. He claimed that the union was not complete and that at the end of a year, unless the trouble was progressive, the healing period would be through.

The court examined him with reference to percentage of disability, and the progressiveness of the condition, etc. An attempt was made in the cross-examination to account for the trouble by subsequent injury. The doctor claimed that the X-ray showed separation, and that the trouble was progressive. The separation probably came from the hardening and atrophy. That the articulation between the sacrum and the ilium had quite a gap in it, and he thought it was progressive. However, it was not an "osteoarthritis," but just a separation. This might or might not arise within a year after the accident.

On reference to Dr. McBride's report as to what would happen to the muscles in regaining compensation, he answered that they had not regained compensation, but that there was a progressive loss of function, and that there was an atrophy of the muscles and the bones. A hypothetical question was put to him about rolling the man in a blanket and keeping him in bed for a period of eight weeks, and being able to determine the healing period or the time this man would be disabled from performing any kind of work. He stated that his opinion was that an X-ray should have been applied at the time he was injured, and the

injured hip placed in a cast so as to have been immovable. That the usual time for a healing of that character was much longer unless placed in a cast. He testified that the man could not do any heavy work now, and that the disability was at least 25 per cent. He told the court he thought the disability he found would be at least 25 per cent. to his leg working around a refinery, due to the accident, and there was no further treatment that would help the man.

The court asked him if he thought his condition would grow worse, and he said he could not say unless he had him under his observation, but that it looked like it was progressive.

The claimant testified, but the attorney for the insurance company objected to his testifying about how the accident happened as being incompetent, irrelevant, and immaterial, but he was permitted to tell how it happened. He testified that they had a company truck, and that there were 35 joints of pipe on it, and that they put 15 men on top of that and the working tools, and that they started out to the plant, and got out three miles out of Cushing west and came to a big hill, and got pretty near the top of it, and that the driver either lost his brakes or mind, and that the truck went to the bottom of the hill, and the boys began to jump and holler and about the time the truck landed he started to give a jump and he was caught between the cab and the trailer, and he was knocked to the ground and he lay there quite a while unconscious, and that they took him to Cushing, to Dr. Davis, and that he was under his care for about six months. He did not work any during that time, but after he got rid of his crutches he went back to the plant and worked for about two hours, and could not work any more, and that he started home, but went down before he got there. He later told the boss he could not work and that his hip hurt him so bad that he liked to have died before he got home. This was about eight months after the accident, and he could not work any more. He was confronted with his signature, but he denied it on some of the documents; and said he did not know who put it there. The representative of the insurance company began to object on account of it being res adjudicata, etc.

The attorney on the other side contended for a continuing jurisdiction in the Commission. He stated that he never had an attorney. That he was farming since he left Cushing. That his leg and hip bothered him in doing any kind of work, and that he used riding machinery, and that he suffered a great deal after walking a great distance. That there was never any hearing on the case prior to that time, and that his condition had gotten worse since he went to the farm, and he could not do the kind of work he was doing when the accident happened.

He stated that he was not before the Industrial Commission. That the fellow he owed a grocery bill to went up there. That there was no hearing. That the man knew he was broke, and came back and said that they had offered to pay him $100. That he knew nothing about Dr. McBride's report. That he took the $99.27 draft. That he never agreed on any settlement. He stated that the insurance man sent him over there after some money from Tulsa, and that the grocery man was right on hand when the check came. His representative before the Commission was the groceryman.

On the 28th of October, 1930, Dr. McBride reported and testified. It was he who had made the report before, and he claimed that the condition of the man now was as it was when he examined the same three years before, and there was no change.

On cross-examination, he said there was some difference in the appearance of the two hips, but that there was no difference in the bone. The bone now seemed to be well healed. That he had two pictures made at different angles, with reference to the bone that was hurt, and that he could see no bone atrophy. That the claimant gave him the history of his inability to do manual labor. That there was a contraction, but no deformity of the left hip.

The court examined him as to whether he took into consideration the atrophy in the hip in making his 10 per cent. deduction, and he said that he did. He did not see any reason why the man should have pain. He claimed to have examined 2,000 cases and had never seen a separation of the sacrum from the ilium, except in cases of direct fracture. That it was easy to be mistaken in reading the plates unless the machine was placed right.

With this testimony before them, the Commission below found that there had been a change for the worse in the man's condition, and made the award accordingly. Considering the symptoms that the patient swore to, and considering the conditions detailed by Dr. Davis, and some of the things detailed by Dr. McBride, and the testimony of Dr. Shaw, we cannot say that the Commission was not within its rights in awarding further compensation on the evidence on the ground of a change in condition.

Neither can we say that the award was excessive. It is accordingly sustained.

It appears that there is a supersedeas bond in this case. The Commission is therefore ordered to proceed to carry out its award.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., and RILEY, J., absent.